## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| LU AKU, )<br><br>Plaintiff, )<br><br>v. )<br><br>CHICAGO BOARD OF EDUCATION, )<br>ATTORNEY REGISTRATION & )<br>DISCIPLINARY COMMISSION, BRIAN )<br>E. CLAUSS, CANNON COCHRAN )<br>MANAGEMENT SERVICES, CHICAGO )<br>TEACHERS UNION, D'ANDRE )<br>WEAVER, LAW OFFICES OF )<br>BRADLEY DWORKIN, ILLINOIS )<br>DEPARTMENT OF HUMAN RIGHTS, )<br>ILLINOIS HUMAN RIGHTS )<br>COMMISSION, JACK SANKER, )<br>MARTAY LAW OFFICE, PARKVIEW )<br>ORTHOPAEDIC GROUP, ROBIN )<br>POTTER, SEDGWICK CLAIMS )<br>MANAGEMENT SERVICES, ROBIN )<br>POTTER AND ASSOCIATES, P.C., )<br><br>Defendants. ) | 17-cv-1226<br><br>Judge John Z. Lee |

## MEMORANDUM OPINION AND ORDER

Plaintiff Lu Aku ("Aku") filed this *pro se* lawsuit against his former employer, the Board of Education of the City of Chicago ("the Board"), D'Andre Weaver ("Weaver"), the principal at the school where Aku taught until 2014, and thirteen other defendants ("Non-Board Defendants"). Aku claims that the Board discriminated against him based on his age, sex, color, race, national origin, and disability in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 1981 and 1983, the Americans with Disabilities Act ("ADA"), and the Age

Discrimination in Employment Act ("ADEA"), and retaliated against him for asserting his rights under those acts. Compl. ¶¶ 9, 10, 12(i), ECF No. 1. Aku further claims that the Non-Board Defendants—a broad range of parties that includes, among others, the Chicago Teachers Union, Aku's former medical provider and former attorneys, two third-party claims administrators for the Board, and the Illinois Human Rights Commission—conspired with and aided and abetted the Board in discriminating and retaliating against him, in violation of Title VII and the ADA. *Id.* ¶¶ 12(j), 13(h). The Board[1] moves to dismiss the complaint in part, pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6), ECF No. 76; twelve of the Non-Board Defendants [2] move, in nine separate motions, to dismiss the complaint as to each of them pursuant to both Rules 12(b)(1) and 12(b)(6), ECF Nos. 10, 12, 22, 38, 46, 52, 64, 89, and 127. For the reasons given below, the Court grants in part and denies in part the Board's motion and grants each of the Non-Board Defendants' motions in full.

---

[1]    The Board's motion was filed on behalf of the Board and Weaver. Board Mot. Dismiss at 1.

[2]    The Court construes the answer filed by Defendant Martay Law ("Martay"), requesting a dismissal with prejudice, as a motion to dismiss. Martay Answer at 1, ECF No. 10. To date, Defendant Illinois Department of Human Rights (IDHR) has not answered or filed an appearance. The initial status report filed on 8/17/17 stated that IDHR had not yet been served. Initial Status Report at 4, ECF No. 150. Aku then filed an affidavit of service on the IDHR, dated May 25, 2017. Pl.'s Ex., Aff. Service IDHR, ECF No. 151.

### Factual Background[3]

Aku, an African-American man born in 1967, began teaching science at Gwendolyn Brooks College Preparatory Academy ("Brooks"), a public school in Chicago, on August 27, 2007. Compl., Ex. Illinois Department of Human Rights ("IDHR") and EEOC Charge #15W0707.03 ("Charge 03") at 1.

Aku experienced a number of challenges during the 2013–14 school year. In August 2013, Weaver, Brooks's Principal, informed Aku that Aku would not teach Physics for 2013–14, as expected, but instead he would teach Biology and Environmental Science. Pl.'s Resp. Opp'n Parkview Mot. Dismiss, Ex. 4, Bullying Grievance ¶¶ 2, 6, 7, 9, ECF No. 96 ("Bullying Grievance"). Weaver then provided Aku with insufficient textbooks for his classes and scheduled Aku to teach during the science department's common planning time. *Id.* ¶ 9. Aku was also evaluated

---

[3] The following facts are taken from Aku's complaint and his briefs in opposition to the motions to dismiss, and are accepted as true on review of the motions to dismiss. *See Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008) (stating that, at the motion-to-dismiss stage, the court "accept[s] as true all well-pleaded facts alleged"); *Smith v. Dart*, 803 F.3d 304, 310 (7th Cir. 2015) ("[F]acts alleged by a plaintiff in a brief in opposition to a motion to dismiss 'may be considered when evaluating the sufficiency of a complaint so long as they are consistent of the allegations in the complaint.'" (quoting *Gutierrez v. Peters*, 111 F.3d 1364, 1367 n.2 (7th Cir. 1997))).

The Court does not, however, consider most of the extensive exhibits attached to Aku's briefs in opposition to the motions to dismiss. *See, e.g.,* Pl.'s Resp. Opp'n ARDC Mot. Dismiss, ECF No. 93 (attaching twenty-four separate exhibits, most of which are copies of email correspondence and print-outs of websites). Rule 12(d) requires the Court to either strike the exhibits or convert the motion to a summary judgment motion. Fed. R. Civ. P. 12(d). The exhibits are stricken accordingly, with one exception: the Court does consider Aku's Bullying Grievance, Pl.'s Resp. Opp'n Parkview Mot. Dismiss, Ex. 4, as an affidavit-like exhibit alleging facts that are "consistent of the allegations in the complaint," *Smith*, 803 F.3d at 310, and "supplement the complaint with factual narration." *See Forseth v. Vill. of Sussex*, 199 F.3d 363, 368 (7th Cir. 2000).

on a different schedule from the rest of Brooks's faculty, with a formal evaluation in fall 2013 and an informal evaluation in the spring; the other teachers had the reverse schedule, with their informal evaluation first. *Id.* ¶ 10; *see* Compl. ¶ 13. Furthermore, Weaver re-assigned Aku's tutoring responsibilities for Biology and Environmental Science, for which Aku had previously received overtime pay, to other teachers who were not teaching those subject areas. Bullying Grievance ¶¶ 28–30. On April 4, 2014, Weaver confronted Aku about a decision he had made to disqualify some Environmental Science students from taking a chapter test. *Id.* ¶ 27. In that conversation, Weaver told Aku that he should consider leaving the field of teaching. *Id.* ¶ 27; Compl. Ex. IDHR and EEOC Charge #15W0807.07 ("Charge 07") at 2.

On April 30, 2014, Aku reported to a Chicago Public Schools Employment Compliance Administrator that the school administration had held a meeting in November 2013 for only African-American teachers, where Weaver had assured the teachers that their jobs were not in danger. Compl. ¶ 16, Charge 07 at 4; Pl.'s Resp. Opp'n Board Mot. Dismiss ¶ 1, ECF No. 136. Aku received a negative teaching evaluation from Assistant Principal Shannae Jackson the following month. Charge 07 at 3. Weaver notified Aku in late June 2014 that he did not have a position at Brooks for the 2014–15 school year, Compl. ¶ 12(a), and that he needed math and science endorsements to teach in Brooks's new Science, Technology, Engineering & Math ("STEM") department. *See* Bullying Grievance ¶ 41; Pl.'s Resp. Opp'n Board

Mot. Dismiss ¶ 5.  Aku later learned that a computer endorsement could substitute for a missing math or science endorsement.  Bullying Grievance ¶ 41.

While Weaver told Aku about the new department's requirements on the same day that he notified Aku that he did not have a position, Weaver had notified other teachers of the new requirement earlier, allowing them to timely acquire their math endorsements.  Bullying Grievance ¶ 41.  According to Aku, Weaver had notified non-African-American science and math teachers of the change in their department and job requirements for 2014–15, before notifying the African-American teachers.  Pl.'s Resp. Opp'n Board Mot. Dismiss ¶ 9.  According to Aku, Weaver then terminated African-American teachers who lacked those endorsements, only to later staff the department with underqualified white teachers.  *See id.* ¶¶ 17, 18.

Around this time, in June 2014, Aku filed his first claim for workers' compensation, related to an ankle injury incurred at Brooks in October 2013. Compl. ¶ 13; Pl.'s Resp. Opp'n Board Mot. Dismiss ¶ 2; Pl.'s Resp. Opp'n Parkview Mot. Dismiss at 4.  The ankle injury caused a medial talar dome lesion, which is in effect "a slow-forming, increasingly painful scar inside his ankle."  Pl.'s Resp. Opp'n Parkview Mot. Dismiss at 7.

After he was dismissed from Brooks, Aku also began filing IDHR complaints. He filed his first IDHR complaint on July 7, 2014, claiming that he was terminated from Brooks on June 26, 2014, due to age discrimination.  Charge 03 at 1.  Two months later, on August 7, 2014, Aku filed a second IDHR complaint, alleging

harassment and unequal treatment, based on age and race, from August 2013 to May 2014, Charge 07 at 1–3, and retaliation and discrimination from May 2014 to August 2014, due to race and the filing of an earlier discrimination charge, *id.* at 3–4.

On or about August 25, 2014, the Board began rehiring teachers who had been laid off from Brooks's math and science department in June 2014. Compl. Ex., IDHR and EEOC Charge #15W0909.15 ("Charge 15") at 2. The Board recalled similarly situated non-black employees and employees who were younger than 40, but it did not recall Aku. *Id.* at 1–2. Specifically, no African-American science teachers were recalled to, or hired by, the department. Bullying Grievance ¶ 42; *see also* Compl. ¶ 13.

On September 10, 2014, Aku filed a third IDHR complaint, claiming that he was not recalled back to Brooks due to his age, race, and national origin. Charge 15 at 1–3. Aku then worked as a substitute teacher in September 2014. Compl. Ex., IDHR and EEOC Charge #15W1027.16 ("Charge 16") at 2. As of October 29, 2014, he had not received pay for that work. *Id.* Aku proceeded to file a fourth and final IDHR complaint on October 29, 2014, alleging harassment and unequal pay from April 30 to October 3, 2014, in retaliation for filing discrimination charges. *Id.* at 1.

Aku continued to pursue workers' compensation. The Board has not yet responded to the workers' compensation claim that he filed in June 2014. Compl. ¶ 13. While a later claim for workers' compensation was granted in the summer of 2016, Aku still has not received all of the related benefits. *Id*. Defendants

Sedgwick Claims Management Services ("Sedgwick") and Cannon Cochran Management Services ("Cannon") are respectively past and present third-party claims administrators for the Board. Pl.'s Resp. Opp'n Cannon Mot. Dismiss at 2, ECF No. 80; Cannon Mot. Dismiss at 4, ECF No. 23.

Aku hired the firms of Martay Law ("Martay") and the Law Offices of Bradley Dworkin, P.C. ("Dworkin") to pursue his workers' compensation claims. Both firms are named as defendants, as is Jack Sanker ("Sanker"), an attorney then working at Dworkin. Compl. ¶ 16(f)(xiii). Aku was displeased with their performance: Martay Law for not taking any action for nineteen days after he retained them, Pl.'s Resp. Opp'n Attorney Review and Disciplinary Committee (ARDC) Mot. Dismiss ¶ 3, ECF No. 93; and Dworkin and Sanker for not fully resolving his workers' compensation and total temporary benefit claims, *id.* ¶ 4. Aku filed complaints about Sanker and Martay Law with the Attorney Review and Disciplinary Commission, which he also sued as a defendant. *See id.*; *see also* Compl. ¶ 16(f)(xi).

Defendant Parkview Orthopaedic Group ("Parkview") treated Aku for his ankle injury. Pl.'s Resp. Opp'n Parkview Mot. Dismiss at 3. Parkview did not determine the root cause of Aku's ankle injury. *Id.* at 5. Parkview released Aku back to full duty on November 9, 2015, without testing his capability to meet minimum job requirements, or noting whether Aku was expected to be permanently impaired. *Id.* at 2. Throughout 2015 and 2016, Aku found Parkview unhelpful when he had difficulty filling his prescriptions and acquiring medical equipment. *Id.* at 5.

7

Defendant Chicago Teachers Union ("Union") filed grievances on Aku's behalf related to some of these events. *See* Compl. ¶ 16(f)(ix); Pl.'s Resp. Opp'n Union Mot. Dismiss ¶ 2, ECF No. 114. Defendant Brian Clauss ("Clauss") arbitrated hearings related to those grievances. Compl. ¶¶ 13, 16(f)(xxvi)–(xxviii). Defendant Robin Potter and Associates ("Potter Law") served as the Union's legal representative during this time. *Id.* ¶ 16(f)(xvii); Pl.'s Resp. Opp'n Union Mot. Dismiss ¶ 6.

Aku has named the IDHR and the Illinois Human Rights Commission (IHRC) as defendants in this action. During the investigation of the IDHR charge, the IDHR asked Aku to stop submitting evidence and eventually dismissed all four charges due to lack of substantial evidence. Compl. ¶ 13. The IDHR also required Aku to describe his race as "black" rather than as African-American. *Id.*; *see also id.* ¶¶ 16(f)(i), (ii). Aku then requested that the IHRC review the IDHR's dismissal of his four charges; as of the filing of the complaint, the IHRC had not responded. Compl. ¶ 13.

Aku filed a charge with the EEOC on November 9, 2016, broadly claiming differential treatment and termination by the Board on the basis of disability, race, national origin, color, and sex, as well as retaliation for asserting his rights. Compl. Ex., EEOC Charge, at 1. Aku received a right-to-sue letter from the EEOC on December 20, 2016. Compl. ¶ 8. Aku initiated this suit on February 15, 2017.

## Legal Standard

A motion to dismiss pursuant to Rule 12(b)(1) tests the jurisdictional sufficiency of the complaint. "When ruling on a motion to dismiss for lack of subject

matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), the district court must accept as true all well-pleaded factual allegations, and draw reasonable inferences in favor of the plaintiff." *Ezekiel v. Michel*, 66 F.3d 894, 897 (7th Cir. 1995). But "[t]he district court may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." *Capitol Leasing Co. v. F.D.I.C.*, 999 F.2d 188, 191 (7th Cir. 1993) (quoting *Grafon Corp. v. Hausermann,* 602 F.2d 781, 783 (7th Cir. 1979)). "[I]f the complaint is formally sufficient but the contention is that there is in fact no subject matter jurisdiction, the movant may use affidavits and other material to support the motion." *United Phosphorus, Ltd. v. Angus Chem. Co.*, 322 F.3d 942, 946 (7th Cir. 2003), *overruled on other grounds by Minn-Chem, Inc. v. Agrium, Inc.*, 683 F.3d 845, 848 (7th Cir. 2012). "The burden of proof on a 12(b)(1) issue is on the party asserting jurisdiction." *Id.*

To survive a motion to dismiss under Rule 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Additionally, when considering motions to dismiss, the Court accepts "all well-pleaded factual allegations as true and view[s] them in the light most favorable to the plaintiff." *Lavalais v. Vill. of Melrose Park*, 734 F.3d 629, 632 (7th Cir. 2013)

At the same time, "allegations in the form of legal conclusions are insufficient to survive a Rule 12(b)(6) motion." *McReynolds v. Merrill Lynch & Co., Inc.*, 694 F.3d 873, 885 (7th Cir. 2012) (citing *Iqbal*, 556 U.S. at 678). As such, "[t]hreadbare recitals of the elements of the cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

The Court is mindful that "a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). Nevertheless, while the Court gives liberal construction to a *pro se* plaintiff's complaint, "it is also well established that pro se litigants are not excused from compliance with procedural rules." *Pearle Vision, Inc. v. Romm*, 541 F.3d 751, 758 (7th Cir. 2008).

With these standards in mind, the Court turns to the allegations in Aku's Complaint.

## Analysis

Aku claims that the Board discriminated against him on the basis of color, national origin, race, and sex, under Title VII; on the basis of color, national origin, and race under 42 U.S.C. §§ 1981 and 1983; on the basis of age under the ADEA; on the basis of disability under the ADA; and retaliated against him for asserting his rights. Compl. ¶¶ 9, 12(i). The Board's alleged discriminatory actions include unequal terms and conditions of employment, unjust termination, and failure to rehire on the basis of age, race, color, and national origin; failure to accommodate a

disability; and retaliation in the form of harassment and unequal pay for filing discrimination charges. *See generally* Charge 03; Charge 07; Charge 15; Charge 16.

The Board moves to dismiss all ADEA, ADA, Title VII, and § 1981 claims against Weaver, as well as all official-capacity claims against him; in other words, it seeks to dismiss all claims against Weaver other than individual-capacity claims brought under §§ 1981 and 1983. Board Mot. Dismiss at 2, ECF No. 76. The Board also moves to dismiss all §§ 1981 and 1983 claims against the Board, and all ADEA, ADA and Title VII claims against it except for those "based on an alleged March 15, 2016 termination." *Id*. For the following reasons, the Court grants the Board's motion to dismiss the claims against Weaver in full, grants the Board's motion to dismiss §§ 1981 and 1983 claims against the Board, and denies the Board's motion to dismiss Aku's ADEA, ADA and Title VII claims against the Board.[4]

## I.   Claims Against Weaver

Aku does not indicate whether he intended to sue Weaver in his personal or official capacity. In accordance with the leniency afforded to *pro se* litigants, *see Talley v. Lane*, 13 F.3d 1031, 1033 (7th Cir. 1994), the Court presumes that Aku intended to sue Weaver in both his capacities.

The Board moves to dismiss all claims against Weaver in his official capacity, arguing that official-capacity claims against him are duplicative of claims against the Board. Board Mot. Dismiss at 4. To the extent that Aku does assert official-

---

[4]    Because they are not the subject of the Board's motion to dismiss, Aku's §§ 1981 and 1983 claims against Weaver in an individual capacity remain.

capacity claims against Weaver, the Court grants the Board's motion to dismiss those claims as redundant of Aku's claims against the Board. *See Sow v. Fortville Police Dep't*, 636 F.3d 293, 300 (7th Cir. 2011) ("[A]n official capacity suit is another way of pleading an action against an entity of which the officer is an agent." (citing *Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985))); *see also Smith v. Metro. Sch. Dist. Perry Twp.*, 128 F.3d 1014, 1021 n.3 (7th Cir. 1997) ("Because [the plaintiff]'s suit is also against the entity, i.e., the School District and School Board, her claims against the principal and assistant principal, in their official capacities, are redundant.").

To the extent that Aku brings ADEA, ADA, and Title VII claims against Weaver himself, the Board moves to dismiss those claims, contending that the statutes do not provide for individual liability. Board Mot. Dismiss at 4.

Seventh Circuit law is clear that the ADA and Title VII do not provide for individual liability. *See Silk v. City of Chi.*, 194 F.3d 788, 797 n.5 (7th Cir. 1999) ("[T]he ADA provides only for employer, not individual, liability."); *Williams v. Banning*, 72 F.3d 552, 555 (7th Cir. 1995) ("[A] supervisor does not, in his individual capacity, fall within Title VII's definition of an employer."). The Seventh Circuit has repeatedly indicated that the ADEA similarly forecloses individual liability. *See Williams*, 72 F.3d at 554–55 (noting that Title VII, the ADA, and the [ADEA] use virtually the same definition of 'employer,' and . . . '[c]ourts routinely apply arguments regarding individual liability to all three statutes interchangeably.'" (citing *EEOC v. AIC Security Investigations, Ltd.*, 55 F.3d 1276, 1279–80 (7th Cir.

12

1995))); *Matthews v. Rollins Hudig Hall Co.*, 72 F.3d 50, 52 n.2 (7th Cir. 1995) (stating in dicta that individuals do not independently satisfy the ADEA's definition of "employer" and therefore cannot be held liable under the statute); *Horwitz v. Bd. of Educ. of Avoca Sch. Dist. No. 37*, 260 F.3d 602, 610 n.2 (7th Cir. 2001) (observing that the plaintiff had "properly" brought her ADEA claim against only her employer, and stating that the Seventh Circuit "ha[s] suggested that there is no individual liability under the ADEA").

Aku does not respond to the Board's arguments, other than to note that Weaver "was an integral part of the scheme to displace Plaintiff; and without Weaver['s] harmful actions there would have been no employment severance whatsoever." Pl.'s Resp. Opp'n Board Mot. Dismiss at 1. The Court thus grants the Board's motion to dismiss all ADEA, ADA, and Title VII claims against Weaver in his personal capacity.

## II.    Claims Against the Board

### A.    ADEA, ADA, and Title VII Claims

The Board construes Aku's ADEA, ADA, and Title VII claims as exclusively premised on four alleged terminations of employment: "(1) from [Brooks] on June 30, 2014 or August 24, 2014; (2) from a two-day teaching assignment on September 22, 2014; (3) at a September 3, 2015 "job orientation session for reassigned teachers"; and (4) "from Substitute Services" on March 15, 2016." Board Mot. Dismiss at 5 (citing Compl. at 3–4 (¶ 12(a))). It then asserts that claims for terminations (1)–(3) should be dismissed because Aku "fail[s] to comply with

administrative prerequisites," *id*. at 5; that is, Aku fails to attach an EEOC right-to-sue notice for a charge encompassing terminations (1)–(3).

Aku attaches one right-to-sue notice, for EEOC charge 440-2017-00645, filed November 9, 2016, which broadly describes discrimination due to race, national origin, color, sex, and disability, as well as discrimination in retaliation for engaging in protective activity. Compl. Ex., EEOC Charge. The Board argues that, because a charge of employment discrimination must be filed with the EEOC or relevant state agency within 300 days of the alleged unlawful employment practice to be timely, *Bass v. Joliet Pub. Sch. Dist. No. 86*, 746 F.3d 835, 839 (7th Cir. 2014), and terminations (1)–(3) occurred more than 300 days before November 9, 2016, Aku is barred from pursuing ADEA, ADA or Title VII claims related to those actions. Board Mot. Dismiss at 4–5.

However, "[a] plaintiff's failure to exhaust administrative remedies"—which includes the failure to timely file an administrative charge—"is an affirmative defense." *Salas v. Wisc. Dep't of Corr.*, 493 F.3d 913, 921 (7th Cir. 2007); *see Laouini v. CLM Freight Lines, Inc.*, 586 F.3d 473, 475 (7th Cir. 2009). And "[a]ffirmative defenses cannot form the basis to dismiss unless the plaintiff's complaint pleads the plaintiff out of court." *Graham v. United Parcel Serv.*, 519 F. Supp. 2d 801, 808 (N.D. Ill. 2007) (citing *Tregenza v. Great Am. Commc'ns Co.*, 12 F.3d 717, 718–19 (7th Cir. 1993)). Aku has not done so here. Accordingly, the Court declines to dismiss Aku's claims of discrimination based on terminations (1)–(3) on this basis.

14

In its motion, the Board narrowly construed Aku's ADEA, ADA, and Title VII claims as to relate only to terminations. *See* Board Mot. Dismiss at 5. The Court notes, however, that Aku's claims under those statutes also encompass claims of discriminatory treatment while he was employed, starting in August 2013, as well as retaliation in the processing of his claims for workers' compensation and other benefits. *See, e.g.,* Compl. ¶¶ 12(b), (e), (g), (i), (j), (w). The Board makes no arguments to dismiss those claims under the ADEA, ADA and Title VII, and they too will proceed.

### B.    Section 1983 Claims

The Board first argues that Aku cannot assert 42 U.S.C. § 1981 claims against it because § 1981 does not provide a cause of action against local state actors, government entities, or municipalities. Board Mot. Dismiss at 7. It construes those claims as 42 U.S.C. § 1983 claims. *Id.* The Board is correct that "§ 1983 remains the exclusive remedy for violations of § 1981 committed by state actors." *Campbell v. Forest Pres. Dist. of Cook Cty., Ill.,* 752 F.3d 665, 671 (7th Cir. 2014). As such, to the extent that Aku makes claims under § 1981 against the Board, the Court too construes those claims as claims under § 1983.

The Board next argues that Aku fails to state a *Monell* claim against the Board, dooming his § 1983 claims. *See Monell v. City of New York Dep't of Social Servs.,* 436 U.S. 659 (1978). Under *Monell,* state actors may not be held liable for constitutional violations under a *respondeat superior* theory; rather, a plaintiff with a § 1983 claim must show that the constitutional deprivation was committed pursuant to government policy, custom, or practice. *Waters v. City of Chi.,* 580 F.3d

15

575, 580 (7th Cir.2009) (citing *Monell,* 436 U.S. at 694). To establish liability under *Monell*, a plaintiff must demonstrate: "(1) an express policy that causes a constitutional deprivation when enforced; (2) a widespread practice that is so permanent and well-settled that it constitutes a custom or practice; or (3) an allegation that the constitutional injury was caused by a person with final policymaking authority." *Id.* at 581.

The Board contends that Aku has pleaded no factual allegations of a discriminatory Board policy or practice, and furthermore, that Weaver, as a principal, does not qualify as a "final policymaker" for whom the Board bears responsibility under *Monell.* Board Mot. Dismiss at 8.

The Court agrees. Aku pleads facts that might, at best, plausibly support a claim of a policy of terminating African-American teachers at Brooks. For example, he alleges that Brooks held an all-African-American teachers meeting to dispel concerns that it would dismiss African-American teachers, then dismissed all African-American science and math teachers. *See* Compl. ¶¶ 13, 16(f)(xxv); Charge 07 at 3, 4, Pl.'s Resp. Opp'n Board Mot. Dismiss at 1. Aku does not plead any facts, however, that indicate a Board-wide policy or practice of discriminating against teachers on the basis of color, national origin, or race.[5] All of Aku's claims of color, national origin, and race discrimination relate to his time at Brooks and the actions of an individual school administration.

---

[5]     Aku's § 1981 claims, and hence his § 1983 claims, exclusively refer to color, national origin, and race discrimination. *See* Compl. ¶ 9. He did not plead § 1983 claims based on age and disability discrimination.

16

Furthermore, the Court finds that Weaver does not qualify as a "final policymaker" for the Board. "Whether a particular official has final policymaking authority is a question of state law." *Wragg v. Vill. of Thornton*, 604 F.3d 464, 468 (7th Cir. 2010). Under Illinois law, "[t]he right to employ, discharge, and layoff [is] vested solely with the board, provided that decisions to discharge or suspend non-certified employees, including disciplinary layoffs, and the termination of certified employees from employment pursuant to a layoff or reassignment policy are subject to review under the grievance resolution procedure." 105 Ill. Comp. Stat. 5/34-8.1 (describing the role of school principals in cities of over 500,000 inhabitants). Indeed, Aku submitted grievances through his Union to the Board, related to his treatment at, and termination from, Brooks, Pl.'s Resp. Opp'n Union Mot. Dismiss ¶ 2, thus underscoring that Weaver's decisions were subject to Board review. Even if Aku were to allege that Weaver had authority to hire and fire, "[t]here must be a delegation of authority to set policy for hiring and firing," for an official to qualify as a final policymaker [for the Board], "not a delegation of only the final authority to hire and fire." *Darchak v. City of Chi. Bd. of Educ.*, 580 F.3d 622, 630 (7th Cir. 2009) (quoting *Kujawski v. Bd. of Comm'rs of Bartholomew Cty., Ind.*, 183 F.3d 734, 739 (7th Cir. 1999)); *see also Yeksigian v. Nappi*, 900 F.2d 101, 105 (7th Cir. 1990).

Because Aku did not plead any facts indicating that there was a discriminatory Board policy or custom, or that Weaver qualified as a "final policymaker" under *Monell*, the Court grants the Board's motion to dismiss any § 1983 claims against the Board.

17

## III. Claims Against the Non-Board Defendants

Aku alleges that the Non-Board Defendants[6] aided and abetted the Board in retaliating against him by failing to reasonably accommodate his disability in violation of the ADA. Compl. ¶ 12(j)(xi) (referencing *id.* ¶ 12(g)). He further claims that the Non-Board Defendants aided and abetted the Board in a conspiracy to discriminate against Aku in violation of Title VII. Compl. ¶¶ 13; 13(h). Aku does not appear to assert any ADEA, § 1981, or § 1983 claims against any of the Non-Board Defendants.

### A. Subject Matter Jurisdiction as to Claims Against the ARDC

The ARDC seeks to dismiss the complaint under Rule 12(b)(1), asserting that the Court does not have subject matter jurisdiction because Aku lacks standing, ARDC Mem. Supp. Mot. Dismiss ¶ 7, ECF No. 47, and that the claims against it are barred by the Eleventh Amendment. *Id.* ¶¶ 13–17.

Standing requires that "the party invoking federal jurisdiction [ ] demonstrate 'a personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief.'" *G& S Holdings LLC v. Cont'l Cas. Co.*, 697 F.3d 534, 540 (7th Cir. 2012) (quoting *Allen v. Wright*, 468 U.S. 737, 738 (1984), *abrogated on other grounds by Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1387–88 (2014)). The ARDC contends that Aku

---

[6] The Non-Board Defendants are: the ARDC, Brian E. Clauss, Cannon Cochran Management Services, Chicago Teachers Union, Law Offices of Bradley Dworkin, P.C., Illinois Department of Human Rights, Illinois Human Rights Commission, Jack Sanker, Martay Law Office, Parkview Orthopaedic Group, Robin Potter, Robin Potter & Associates, P.C., and Sedgwick Claims Management Services.

cannot demonstrate a personal injury traceable to its conduct, because he has only asserted that the ARDC has not pursued disciplinary action against certain attorneys. ARDC Mem. Supp. Mot. Dismiss ¶ 8.

Indeed, Aku's only direct reference in his complaint to the ARDC is a request that the agency "reopen investigations of David Martay and Jack Sanker." Compl. ¶ 16(f)(xi). But "a citizen lacks standing to contest the policies of the prosecuting authority when he himself is neither prosecuted nor threatened with prosecution." *Wikberg v. Reich*, 21 F.3d 188, 190 (7th Cir. 1994) (quoting *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973)). And "neither intellectual curiosity nor purely psychological harm suffices to establish [standing]." *United States v. All Funds on Deposit with R.J. O'Brien & Assocs.,* 783 F.3d 607, 616 (7th Cir. 2015), *cert. denied sub nom. One Beacon Ins. Co. v. United States,* 136 S. Ct. 1374 (2016). Aku simply cannot demonstrate that the ARDC's failure to prosecute the attorneys harmed him.

Aku's only response to this argument is to provide a description of the ways Martay and Sanker have wronged him, Pl.'s Resp. Opp'n ARDC Mot. Dismiss at 2, and to assert that the agency's "oversight" with respect to Aku's requests for investigation of the two attorneys "deserves federal attention," *id.* at 1–2. Because these arguments do not establish personal injury fairly traceable to the ARDC, the Court concludes that Aku is unable to demonstrate standing regarding his claim against the ARDC.

The ARDC also contends that, as the "the investigative and prosecutorial arm of the Illinois Supreme Court," Aku's claims against it are barred by sovereign

immunity. ARDC Mem. Supp. Mot. Dismiss ¶ 15; *see also* Ill. S. Ct. Rules 751, 752(a). The Eleventh Amendment bars suits against states in federal court, unless Congress has overridden the state's immunity or the state has waived it. *Ryan v. Ill. Dep't of Children & Family Servs.*, 185 F.3d 751, 758 (7th Cir. 1999). As a branch of the state government, the Illinois Supreme Court is protected from federal suit under the Eleventh Amendment; accordingly, so is the ARDC. *See Landers Seed Co. v. Champaign Nat'l Bank*, 15 F.3d 729, 731–32 (7th Cir. 1994); *Crenshaw v. Supreme Court*, 170 F.3d 725, 729 (7th Cir. 1999). Moreover, while Congress "validly abrogated the States' Eleventh Amendment immunity with respect to Title VII disparate treatment claims," *Nanda v. Bd. of Trs. of the Univ. of Ill.*, 303 F.3d 817, 831 (7th Cir. 2002), only persons or entities that qualify as a plaintiff's "employers" are liable to suit under Title VII, *see infra; Knight v. United Farm Bureau Mut. Ins. Co.*, 950 F.2d 377, 380 (7th Cir. 1991). As a result, Aku's claims against the ARDC are barred by sovereign immunity.

Because Aku cannot demonstrate an injury traceable to the ARDC for any of his claims, and because his claims are further barred by sovereign immunity, the Court grants the ARDC's motion to dismiss Aku's claims against it for lack of subject matter jurisdiction under 12(b)(1).

### B. Arbitral Immunity

Clauss served as an arbitrator for grievances filed by the Union on behalf of Aku. *See* Compl. ¶¶ 13, 16(xxvi)–(xxix). All of Aku's allegations regarding Clauss concern Clauss's actions while serving as arbitrator on October 13, 2016, and January 31, 2017. *Id.* Aku alleges that, during the arbitration hearings, Clauss

insulted Aku by saying that Aku had "read the book about courtroom proceedings." *Id.* ¶ 16(f)(xxvii). Clauss moves to dismiss all claims against him under Rule 12(b)(6), arguing that arbitrators enjoy absolute immunity for all acts performed in the capacity as arbitrator.

Arbitrators are shielded from liability by absolute immunity. *See Coleman v. Dunlap*, 695 F.3d 650, 652 (7th Cir. 2012) ("Parties who, although not judges, engage in adjudication (such as private arbitrators or administrative tribunals) . . . enjoy absolute immunity."); *Tamari v. Conrad*, 552 F.2d 778, 781 (7th Cir. 1977) (comparing suing an arbitrator to suing jurors when a litigant is dissatisfied with the outcome of a lawsuit); *Int'l Med. Group, Inc. v. Am. Arbitration Ass'n*, 312 F.3d 833, 843 (7th Cir. 2002) (collecting cases on "arbitral immunity"). "Absolute immunity extends to all acts taken by arbitrators within the scope of their adjudicative duties, even those alleged to be malicious, irregular, or erroneous." *Johnson v. Thompson-Smith*, 203 F. Supp. 3d 895, 902 (N.D. Ill. 2016) (citing *Forrester v. White*, 484 U.S. 219, 227 (1988) and *Dellenbach v. Letsinger*, 889 F.2d 755, 759 (7th Cir. 1989)). As Aku's allegations regarding Clauss exclusively concern Clauss's acts in the scope of his arbitral duties, all claims against Clauss are barred by arbitral immunity.

## C. Conspiracy/Aiding and Abetting Under the ADA and Title VII

The Non-Board Defendants contend that Aku's claims that they conspired with, and aided and abetted, the Board in discriminating against him, in violation of Title VII, and retaliating against him, in violation of the ADA, cannot be maintained because the relevant statutes provide no relief against non-employers.

*See, e.g.,* Parkview Reply Br. at 8, ECF No. 118; Cannon Cochran, Mem. Supp. Mot. Dismiss at 3–4. They therefore seek to dismiss those claims under Rule 12(b)(6) for failure to state a claim upon which relief can be granted.

A plaintiff "must prove the existence of an employment relationship in order to maintain a Title VII action" against a defendant. *Knight*, 950 F.2d at 380. While the defendant need not be the plaintiff's "direct employer," *Love v. JP Cullen & Sons, Inc.*, 779 F.3d 697, 701 (7th Cir. 2015) (citing *EEOC v. Ill.*, 69 F.3d 167, 169 (7th Cir. 1995)), there must be either be a *de facto* (or indirect) employment relationship, or the defendant must be an "agent" of the plaintiff's employer. *Id.*; *see also* 42 U.S.C. § 2000e(b) ("The term 'employer' means a person engaged in an industry affecting commerce who has fifteen or more employees for each working day . . . and any agent of such a person."). The ADA also "provides only for employer, not individual, liability," *Silk*, 194 F.3d at 797 n.5, and has similar requirements: it bars "employer[s], employment agenc[ies], labor organization[s], or joint labor-management committee[s]" from discriminating against employees on the basis of their disability, 42 U.S.C. §§ 12111, 12112(a), and includes "agents" in its definition of "employers." § 12111(5)(A).

Aku neither alleges nor pleads any facts indicating that he had an actual or *de facto* employee-employer relationship with any of the Non-Board Defendants. *See Love,* 779 F.3d at 702 (citing *Knight,* 950 F.2d at 378–79). And it is irrelevant whether any of the Non-Board Defendants could be seen as "agents" of the Board because Title VII and ADA violations by an agent are imputable only to the

employer, and not to the agent itself. The Seventh Circuit has interpreted the "and any agent" language in the definition of "employer" in the ADA and similar statutes as "ensur[ing] that courts would impose *respondeat superior* liability upon *employers* for the acts of their agents." *Id.* at 1281 (emphasis added). *See also Chi. Reg'l Council of Carpenters v. Pepper Constr. Co.*, 32 F. Supp. 3d 918, 923 (N.D. Ill. 2014) (concluding that liability under the ADA rests with the employer, not with a purported "agent" hired to conduct employment testing). As such, agents are not liable; the employer is.[7] Accordingly, Aku fails to state a claim against any of the Non-Board Defendants[8] under Title VII or the ADA.

Therefore, to the extent that Aku asserts a claim that the Non-Board Defendants conspired with or aided and abetted the Board in discriminating and retaliating against him in violation of Title VII and the ADA, he fails to state a claim to relief against the Non-Board Defendants, and the claims are dismissed with prejudice.

---

[7]   To the extent that Aku was attempting to plead common-law aiding and abetting and conspiracy claims, as two of the Non-Board Defendants posited, *see, e.g.,* Parkview Mem. Supp. Mot. Dismiss at 12–14; ARDC Mem. Supp. Mot. Dismiss ¶¶ 23, 24, such claims would fail for the same reasons. Beyond the fact that Aku failed to plead the elements of Illinois conspiracy and aiding and abetting, such claims are not permitted under Title VII and the ADA because so permitting would expand the scope of liability beyond a plaintiff's employer. *See Love,* 779 F.3d at 701 (holding that Title VII liability is limited to a plaintiff's employer); *Silk,* 194 F.3d at 797 n.5 ("[T]he ADA provides only for employer, not individual, liability.").

[8]   *See* note 7, *supra* (listing Non-Board Defendants).

### D.     Independent Claims Against Non-Board Defendants

Aku provides a list of actions committed by "defendant(s)," Compl. ¶ 12, most of which appear to describe ways in which the Board, acting independently, violated the ADA, ADEA, Title VII, § 1981, and § 1983. *See, e.g., id.* ¶ 12(a)–(h), (k)–(m). The impression that these items refer solely to the Board is reinforced by Aku's listing of eleven of the Non-Board Defendants as "aiding and abetting" the "defendant(s)" in retaliation against Aku. *Id.* ¶ 12(j). However, some of the later items on the list could be interpreted as applying solely to Non-Board Defendants. *See id.* ¶¶ 12(o), (p), (q), (t), (u), (w), (x), and (y). For example, the clause, "failed to address attorney misconduct," might only be leveled at the ARDC, see *id.* ¶ 12(o); the clause, "participated in medical malpractice and/or insurance fraud schemes" might only relate to Parkview, see *id.* ¶ 12(q); and the clause "refused to investigate complaints of aiding & abetting," might only be directed toward the IDHR and IHRC, see *id.* ¶ 12(u).

If, indeed, some of the items on the list were intended to be independent claims against unnamed individual Non-Board Defendants, Aku would have needed to connect the claims with individual Defendants in order for the parties to be on notice and for the Court to evaluate the legal sufficiency of the claims. *See Agnew v. Nat'l Collegiate Athletic Ass'n*, 683 F.3d 328, 334 (7th Cir. 2012) ("[A] complaint may be 'so sketchy that the complaint does not provide the type of notice of the claim to which the defendant is entitled' . . . in which case a dismissal of the complaint is proper." (quoting *Airborne Beepers & Video, Inc. v. AT & T Mobility*

*LLC,* 499 F.3d 663, 667 (7th Cir. 2007))). Moreover, Aku's replies indicate that he did not intend those allegations to serve as claims. *See, e.g.,* Pl.'s Resp. Opp'n Parkview Mot. Dismiss at 8 (accepting the "request" from Parkview that he "submit a complaint of medical malpractice"). The Court, therefore, does not construe Compl. ¶¶ (o), (p), (q), (t), (u), (w), (x), or (y) as legal claims, against the Non-Board Defendants or otherwise. To the extent that Aku intended them to stand as independent legal claims, they are dismissed for failure to state a claim under Rule 12(b)(6).

## Conclusion

For the reasons stated herein, the Board's partial motion to dismiss [76] is granted in part and denied in part. The Court grants the Board's motion to dismiss all claims against Weaver (other than personal-capacity claims brought under §§ 1981 and 1983 for discrimination on the basis of color, national origin, and race) and all § 1983 claims against the Board; in all other respects, the Board's motion to dismiss is denied. The following causes of action against the Board remain: Title VII color, national origin, race, and sex discrimination claims; ADEA age discrimination claims; ADA disability discrimination claims; and Title VII, ADEA, and ADA retaliation claims.

The Non-Board Defendants' motions to dismiss, [10], [12], [22], [38], [46], [52], [64], [89], [127], are granted in full, and Aku's claims that the Non-Board Defendants aided, abetted, and conspired with the Board to discriminate and retaliate against him, in violation of Title VII and the ADA, are dismissed with

25

prejudice. Claims against Clauss and the ARDC are dismissed, respectively, by arbitral immunity and lack of subject matter jurisdiction. There are no remaining claims asserted against the Non-Board Defendants. Accordingly, the following Non-Board Defendants are terminated: the Attorney Registration & Disciplinary Commission, Brian E. Clauss, Cannon Cochran Management Services, Chicago Teachers Union, Law Offices of Bradley Dworkin, P.C., Illinois Human Rights Commission, Jack Sanker, Martay Law Office, Parkview Orthopaedic Group, Robin Potter, Robin Potter & Associates, P.C., and Sedgwick Claims Management Services. To date, Non-Board Defendant Illinois Department of Human Rights (IDHR) has not answered or filed an appearance, although Aku filed an affidavit of service on the IDHR, dated May 25, 2017. Pl.'s Ex., Aff. Service IDHR, ECF No. 151. As a result, three Defendants remain: Weaver, the Board, and the IDHR.

If Aku wishes to file an amended complaint consistent with this order, he must do so by 12/5/17. The parties are encouraged to prepare to discuss discovery at the status hearing previously set for November 16, 2017.


**IT IS SO ORDERED.**                    **ENTERED     11/14/17**

_____
                                         **John Z. Lee**
                                         **United States District Judge**


26